Frank G. v Carol G. (2006 NY Slip Op 52149(U))

[*1]

Frank G. v Carol G.

2006 NY Slip Op 52149(U) [13 Misc 3d 1237(A)]

Decided on November 1, 2006

Family Court, Suffolk County

Simeone, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through December 14, 2006; it will not be published in the printed Official Reports.

Decided on November 1, 2006

Family Court, Suffolk County
Frank G., Petitioner(s),
against
Carol G., Respondent
V-7644-06/06A

Attorneys B. Tartaglia, K. Molloy, T. Liotti

Ettore Simeone, J.
Petitioner, Frank G., filed application dated May 4, 2006, seeking to have respondent, Carol G., found in contempt for failure to abide by the provisions set forth in the stipulations of settlement dated September 4, 2003 and December 4, 2003 which were incorporated but did not merge in the Judgment of Divorce dated March 26, 2004. Specifically, petitioner alleges that respondent withheld the child from visitation on March 31, 2006, April 7, 2006, April 14, 2006, April 21, 2006 and April 28, 2006 in violation of the aforementioned stipulations and judgment of divorce.
Fact-Finding
Petitioner testified that he has been employed as a fleet service worker for U.S. Airways at La Guardia Airport. Petitioner submitted the "Partial Stipulation of Settlement dated September 4, 2003" (Petitioner's Exhibit "1"), the Stipulation of Settlement dated December 4, 2003 (Petitioner's Exhibit "2") and the Judgment of Divorce dated March 26, 2004 (Petitioner's Exhibit "3"). In accordance with "The Partial Stipulation of Settlement" the parties agreed to joint legal custody of the child with residential custody to respondent. Further, the parties agreed that petitioner is to have visitation with the child every Thursday from 3:00 p.m. to Saturday at 10:00 a.m. as well as alternating weekends from Saturday at 10:00 a.m. until Sunday at 7:00 p.m. Petitioner testified that once school started, the parties agreed that he would pick up the child on Fridays from school for visitation, so as not to interrupt the child's school week.
Petitioner testified that on Friday, March 31, 2006, when he went to pick up the child at "The Holy Family School", he was told that she was picked up an hour before he arrived. Petitioner called the police to file a complaint and submitted a copy of "the field report" (Petitioner's Exhibit "4"). As a result, petitioner did not have visitation with the child that weekend.
[*2]
Petitioner stated that on Friday, April 7, 2006, the child's birthday, he went to pick up the child from school and was told she was not in school. Petitioner stated that he tried calling respondent, but did not get a response and was unable to speak with the child. Petitioner submitted his telephone records which indicated that a telephone call was made on April 7, 2006, to Carol G.'s home telephone number, lasting for one minute (Petitioner's Exhibit "5").
On Friday April 14, 2006, petitioner stated that he went to school to pick up the child and was told that respondent had informed the school that there was a "change in the order" and that he was not permitted to pick up the child. Petitioner called respondent and left messages, but did not receive any response. The telephone records submitted by petitioner indicated that a call was made on April 14, 2006, to respondent's home telephone number at 1:29 pm lasting for 1 minute. (Petitioner's Exhibit "5")
Petitioner alleged that he was supposed to have visitation with the child on April 21, 2006, but that respondent sent the child to the babysitter.
Petitioner once again attempted to pick up the child at school for visitation on Friday April 28, 2006, but was again denied access to the child. Petitioner indicated that since September of 2005, prior to the aforementioned dates, he had been picking up the child on Fridays at the main office of the school.
Petitioner stated that he tried to contact the child by telephone, between March 31, 2006 and April 28, 2006 without success. Petitioner was finally able to speak with "Carmella", the child's babysitter, to ask her why respondent was preventing him from seeing the child and she told him only that respondent told her to pick up the child.
Petitioner indicated that after he filed the instant violation petition, at the end of June of 2006, visitation resumed at the Court's direction and that when he saw the child again, she cried and said "I missed you". Petitioner and respondent agreed that he would pick up the child on Thursdays, in accordance with the parties' stipulation, until such time as school was back in session. Petitioner stated he did not send respondent notification to exercise his three non-consecutive weeks of summer vacation visitation in accordance with the stipulation because respondent "told me no".Petitioner stated that the child currently attends St. Joseph's Academy in Brentwood and that he now picks up the child for visitation on Friday afternoon at respondent's house in accordance with respondent's wishes.
Petitioner testified that he never leaves the child in the care of third parties, but does have concerns about the child in respondent's care as there are "three single people" living in the home and "people coming and going." Petitioner stated that he did not know that the child was in "therapy", but the child did tell him that she was speaking to someone named "Mark".
On cross-examination, petitioner testified that he lives alone, but that his mother comes to his house to watch the child at times. Additionally, he stated that the child has slept over his parents house on a "pull-out" couch, but that the last time she slept over at his parent's house was in September or October of 2005. Petitioner admits that he is aware that respondent has made allegations that his father sexually abused the child.
Respondent, Carol G., testified that she has been living at her current address for the past four years with her twin sister and her daughter. Respondent states that she and petitioner have joint custody of the child and that she is the residential custodian. Respondent admitted that while the stipulation awarded petitioner visitation every Thursday to Saturday, the parties agreed [*3]that in September of 2005, when the child started kindergarten, petitioner would pick up the child on Fridays at school.
Respondent stated that on March 31, 2006, she did not know petitioner went to the school to pick up the child, but that she had tickets for a school play that day and picked up the child early from school. Respondent claimed that she told petitioner about the play two weeks before and invited him, but that he told her that "it was my day and time and she [the child] wasn't going to a play".
Respondent testified that on April 7, 2006, she kept the child home from school for her birthday, but that it wasn't his weekend. Respondent did not inform petitioner of this because at that point they "were not speaking." On cross-examination, however respondent stated that she thought petitioner would pick the child up at the house, but that respondent never called or left a message that day.Respondent admits that on April 14, 2006, she did not permit petitioner to visit with the child because of the sleeping arrangements made when petitioner took the child to stay over at his parents' house. Respondent alleged that the child told her that when she stayed with petitioner's parents, she was "trapped" in the grandparent's bedroom and slept in the same bed with her grandfather while her grandmother slept on the couch. Respondent stated that the child did not specify when the incident occurred.
Respondent testified that on April 21, 2006, she left the child with the babysitter and admits that petitioner was supposed to have visitation that day. Respondent stated that she never told the school that petitioner no longer has visitation, but admits that she did say that she wants the child to go home on the bus. Additionally, respondent indicated that she did not permit the school to release the child at 12:30 p.m. on April 28, 2006, when the principal called her after petitioner arrived to pick up the child. Respondent stated that the next time petitioner saw the child was the end of June of 2006, but claims that he had been away on vacation.
Respondent admits that she did not seek a stay of the order of visitation or any other Court intervention before she decided prohibit the child from visiting with respondent . Respondent stated that sometime in March of 2006, she called Child Protective Services and did not permit visits. Respondent further stated that the child had made similar allegations in 2003, at which time she called Westchester County Child Protective Services and the Police.
Respondent states that in June of 2006, she began to take the child to see Dr. Lerner, for therapy once a week.Respondent testified that while the child loves her father, she "is afraid for her daughter's safety" and "had to stop visitation".
Respondent's sister, Karen Ramagle testified that at the end of March of 2006, the child told her that she slept in her grandparents' bedroom with her grandfather after her grandparents had a fight and that the bedroom door was locked. On cross-examination she stated that the child said that the door was "closed" and not "locked" and denied having any knowledge as to whether the grandparents' bedroom door had a lock.
Elise Mecalianos, the child's babysitter testified that sometime in the beginning of April of 2006, the child told her that "she has to sleep with grandpa" and that "she can't tell because they would put Mommy in jail." Ms. Mecalianos informed respondent of what the child had said the same day.
Legal analysis:
The Court has reviewed the entirety of the evidence in the instant case and finds that [*4]respondent wilfully violated the Judgment of Divorce dated March 26, 2004. While respondent denied that she intentionally withheld the child from visitation on March 31, 2006, claiming that she told petitioner two weeks prior that she had tickets to a play, she admitted that petitioner told her that it was his visitation and that the child was not to go to the play.
On April 7, 2006, respondent admits that she kept the child out of school for her birthday and therefore respondent was unable to pick the child up at school. Respondent claimed that she expected petitioner to pick the child up at the house and that he never called, however the phone records submitted by petitioner indicated otherwise.
On April 14, 2006, respondent admits that she withheld the child from visitation, because the child told her that she was forced to sleep in the same bed as her grandfather when she slept over petitioner's parents' house. On April 21, 2006, respondent admitted that she left the child with the babysitter, even though petitioner was supposed to have the child for the day.
Petitioner testified that on April 28, 2006, he was denied access to the child when he arrived at school to pick her up. Respondent claimed that while she never told the school the visitation order had changed, she told the principal that day, not to allow petitioner to take the child out of school at 12:30 p.m.
The Court notes that in 2003, petitioner filed a previous contempt petition against respondent for denial of visitation as acknowledged by the parties in the stipulation of settlement dated December 4, 2003 which states:

"The parties hereto agree that in resolution of the Husband's pending contempt application, the Wife shall hereby acknowledge her noncompliance with the So-Ordered Partial Stipulation of Settlement dated September 6, 2003, in which she denied the Father visitation without any contravening orders. The Wife shall further consent to an adjudication of contempt against her. The Husband shall consent thereto, but shall not seek the imposition of any further penalties or punishment." (Petitioner's Exhibit "2")
Additionally, the Court further ordered C.P.S. to conduct an investigation into the recent allegations made by the child. After C.P.S. submitted a report of its findings including a history of previous allegations made by respondent and the child , the Court ordered that visitation between the petitioner and the child resume.
Despite respondent's alleged concern for the well-being of her daughter, she admits to a purposeful violation of the Court order when she deliberately denied petitioner his Court ordered right to visitation with the parties' child. While respondent claims to have acted in the child's best interests in prohibiting contact between the child and her father, "[i]t is firmly established...that...wherever possible, the best interests of a child lie in his/her being nurtured and guided by both of his natural parents." Daghir v. Daghir, 92 AD2d 191, 193, 441 NYS2d 494 (2d Dept. 1981).
While respondent attempts to justify her decision to withhold the child from visitation, she unilaterally did so without the proper Court scrutiny required when denying a parent the most inherent right to contact with his/her child. "A non-custodial parent should have reasonable rights of visitation, and ....the denial of those rights is so drastic it must be based upon substantial evidence that visitation would be detrimental to the welfare of the child." Klutchko v. Baron, 1 [*5]AD3d 400, 405, 768 NYS2d 217, 221 (2d Dept. 2003).
Furthermore, while petitioner does not seek a change of custody in the instant case, the Second Department has held that "[i]nterference with the relationship between a child and a non-custodial parent by the custodial parent has been said to be an act so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as a custodial parent." (In the Matter of Carl J.B. v. Dorothy T., 186 AD2d 736, 737, 589 NYS2d 53, 54 (2d Dept. 1992)).
While petitioner does not seek a change of custody in the instant case, the Court may do so when a custodial parent purposefully interferes in the child's relationship with the non-custodial parent. The Court finds respondent's purported claim that she was acting to protect her child by withholding her from visitation with petitioner questionable. Even if the Court were to find respondent's claim credible, such explanation is a mitigating factor and not a defense to a wilful failure to abide by the Court order. If respondent believed visitation needed to be stopped she should have filed an appropriate application to the Court and should not have unilaterally cut off Court ordered visitation with the petitioner. Even though the Court will not order change of custody, fine or imprisonment at this juncture, respondent is to be mindful that further violation of the order of the Court may result in such.
During the pending of this petition, the Court, while directing the recommencement of petitioner's visitation, directed same not be overnight with the petitioner's father. While the Court now will not continue such direction, it wishes to remind petitioner that the visitation he is entitled to is intended for the purpose of cultivating and maintaining a relationship between him and the child necessitating that he be with the child during these visitations as much as possible.
Accordingly, the Court hereby finds respondent in contempt for her wilful failure to abide by the terms of visitation in the Judgment of divorce dated March 26, 2004. The Court herein orders that petitioner be granted "make-up" time for the visitation denied to him by respondent and is to submit to the Court a proposed order for a schedule of such on notice to respondent by November 15, 2006. Respondent's consent to said schedule shall not be withheld absent a showing to the Court of good cause.
Further, the Court grants petitioner's request to seek attorneys fees and is directed to submit a motion for counsel fees with notice to respondent by November 22, 2006.
This constitutes the final order of the Court.
E N T E R

HON. ETTORE A. SIMEONE
J. F. C.

Order mailed:
[*6]Pursuant to §1113 of the Family Court Act, "an appeal must be taken within 30 days of receipt of the order by appellant in court, 35 days from the mailing of the order to the appellant by the clerk of the court, or 35 days after service by a party or law guardian upon the appellant, whichever is earliest."